**Pages 1 - 20**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

Before The Honorable Andrew G. Schopler, Judge

PEDRO SIMON JUAN, )
Petitioner, )
VS. ) NO. 26-CV-02237-AGS-MMP
PAMELA BONDI, et al., )
Respondents. )

San Diego, California
Thursday, June 11, 2026

**TRANSCRIPT OF MOTION HEARING**

**APPEARANCES**:

For Petitioner:
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, California 92101
**BY: ZANDRA LOPEZ, ESQ.**
**ASSISTANT FEDERAL PUBLIC DEFENDER**

For Respondents:
ADAM GORDON
United States Attorney
880 Front Street, Room 6293
San Diego, California 92101
**BY: HUNTER V. NORTON, ESQ.**
**ASSISTANT UNITED STATES ATTORNEY**

Reported By: James C. Pence-Aviles, RMR, CRR, CSR No. 13059
Official Court Reporter

Case 3:26-cv-02280-AGS-MMP Document 8 Filed 09/11/26 PageID.100 Page 2 of 2

**Thursday - June 11, 2026** **2:00 p.m.**

**P R O C E E D I N G S**

---000---

**THE CLERK:** All rise.

This United States District Court for the Southern District of California is now in session, the Honorable Andrew G. Schopler presiding.

**THE COURT:** Good afternoon, everyone.

**MS. LOPEZ:** Good afternoon.

**MR. NORTON:** Good afternoon, Your Honor.

**THE CLERK:** Please be seated and come to order.

Calling Matter Number 1, 26-CV-2237, Simon Juan v. Bondi, et al., for a motion hearing.

Counsel, please state your appearance for the record.

**MS. LOPEZ:** Good afternoon. Zandra Lopez on behalf of Mr. Simon.

**THE COURT:** Good afternoon, Ms. Lopez.

**MR. NORTON:** And good afternoon, Your Honor. Hunter Norton for respondents.

**THE COURT:** Good afternoon, Mr. Norton.

All right. This is our second hearing --

**MS. LOPEZ:** Uh-huh.

**THE COURT:** -- in this case, and I have reviewed the parties' papers. I'll -- updated papers. I'll give you my tentative ruling, based on the now-complete record and

argument, and then I'll hear oral argument from each side.

My tentative ruling is to deny the amended habeas petition, at ECF 9, and I'll -- I won't repeat the comments I made at our -- our last hearing, by way of tentative, but I do want to address the argument that Simon Juan has made, that he's entitled to immediate release because he wasn't given a pre-deprivation hearing.

There are many District Courts that have suggested that a pre-deprivation remedy is appropriate or even required. And I'll cite, for example, to *E.A. T.-B. v. Wamsley*, 795 F.Supp.3d 1316, Page 1324, Western District of Washington, 2025, which held that a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.

There are other cases that come to that same conclusion, yet in virtually every other legal context that I can think of, it seems to me that the due process safeguard that would be analogous to this is provided post-deprivation or at least constitutionally can be.

So, for example, with criminal arrests, a bond hearing and judicial determination is made after deprivation of liberty. For incapacitation for mental issues, the -- those are issued ex parte typically and may be challenged afterwards. For revocation of supervised release, an arrest warrant is issued ex parte. And the challenge to the revocation or the request

to be released happens post-deprivation, similar for pretrial release and probation. The list goes on.

So with all due respect to the courts that have found otherwise, I find unpersuasive the idea that an individual with a lower liberty interest, which would include people who are not citizens of the United States, would have a greater due process protection than people who are in the situations I have just described.

And in the Ninth Circuit case of *Rodriguez Diaz*, the Ninth Circuit explicitly said that post-deprivation process -- in that case, the process occurred two months after the petitioner's arrest, and he was given merely the -- a look-by -- or it was an analysis provided by an ICE officer. The Ninth Circuit held that that was sufficient, albeit in the Section 1226(a) context, not a parole revocation one. But in *Rodriguez Diaz* -- the citation for that is 53 F.4th, at Page 1209, specifically the pincite.

So I think that since Simon Juan already had a post-deprivation bond hearing in this case, the case before me -- that he's had the due process that he's entitled to, and the petition, therefore, should be denied. At least that's my -- my tentative ruling, and I think I'll stop there with -- with my initial thoughts.

Because my tentative ruling is to deny the amended petition, why don't we have Ms. Lopez argue first.

Case 3:26-cv-02780-AGS-MMP Document 8 Filed 09/11/26 PageID.1071 Page 5 of 21

**MS. LOPEZ:** Sure, Your Honor, and I'll keep it brief, but I -- I understand Your Honor's tentative.

I would say that the examples provided by the Court, in regards to criminal, revocation of supervised release, even incapacitation of those that have mental illness, there's already been some kind of finding prior to the arrest. And in -- in the criminal context, it would be probable cause.

So --

**THE COURT:** I mean -- but that finding could happen by a police officer; right?

**MS. LOPEZ:** That finding could happen by a police officer, but it's -- it's a significant standard --

**THE COURT:** Uh-huh.

**MS. LOPEZ:** -- which would apply to both citizens and noncitizens, to anybody, but it's a pretty high -- it's a relatively high standard.

Here, the problem is that there's no standard whatsoever, and I think that's the concern in *Mathews*, which was a civil case. I think it involved social security issues, and -- and in that case, it didn't involve detention. And in that case, in *Mathews*, it says pre- -- predetermination rather than post.

And that's specifically what *Pacheco* -- the case -- I'm sorry. It's *Perez Bueno*, the case that I cited in my supplemental --

**THE COURT:** Hmm.

**MS. LOPEZ:** -- is talking about.

So I do believe that there's a difference here. People are being picked up. There's blanket -- based -- based on blanket rules, and that's the concern. And that's why I believe so many courts in this district have said that if somebody has some kind of parole, albeit a conditional parole, they are entitled to -- to due process under *Mathews*.

And *Mathews* specifically talks about a predetermination finding rather than a post-determination, and I can't -- if -- I might be able to find the specific pinpoint, but -- I just printed it out. So I don't have the specific pinpoint, but *Mathews* does talk about the need for it to be pre-detention -- predetermination rather than post.

**THE COURT:** Pre-deprivation?

**MS. LOPEZ:** Pre-deprivation, correct.

**THE COURT:** Yeah.

**MS. LOPEZ:** And -- and that's specifically what the case in *Perez Bueno* talks about, and I cite to other cases in my supplemental briefing that I don't need to repeat now. So that -- that's what I would say about that.

I will also say -- I don't know how this fits in, but looking at the Immigration Judge's finding as to the bond hearing that happened more than a month after his detention, the court found him to be a flight risk.

But it's important to note that Mr. Simon has been

reporting since 2023. He reports once a week -- he reported once a week from his home.

**THE COURT:** Do we know all the facts that were presented to the Immigration Judge at that hearing?

**MS. LOPEZ:** I -- I don't know.

**THE COURT:** Okay.

**MS. LOPEZ:** I don't know. All I have is the supplemental exhibit presented by Government counsel.

**THE COURT:** Because I'm -- I'm loath to second-guess the Immigration Judge's determination based on a record I'm -- I'm not privy to.

I agree with you. If -- if the only record before the Immigration Judge was that he was reporting for months or years without incident, it's hard to figure out how you would get to a flight risk from -- from that alone, but I suspect there were additional facts before the Immigration Judge.

**MS. LOPEZ:** Well, the -- the court's finding, according to ECF 15-1, that was submitted by the Government -- at Page 2, "The Court finds the respondent did not meet his burden of demonstrating he is not a flight risk, given the posture of his case as well as his prior convictions and disregard for immigration law."

**THE COURT:** Uh-huh.

**MS. LOPEZ:** I mean, I have already raised the concerns regarding the prior convictions, and there's no evidence of --

of violations of immigration law.

I -- I understand we don't have a transcript here, but I think that's the problem with doing it post-deprivation. The person is so far away from his family, from communication from the outside world, that they can't possibly -- accurately present their case before the judge, and they've already been detained for -- for more than a month.

**THE COURT:** Uh-huh.

**MS. LOPEZ:** So based on all of that, Your Honor, I submit, unless Your Honor has any other questions for --

**THE COURT:** No. Thank you, Ms. Lopez. I think you've made some good points, and I'm interested to hear the Government's response.

So why don't we hear from Mr. Norton?

**MR. NORTON:** Thank you, Your Honor.

Given the Court's tentative, I just want to respond directly to a few points raised by opposing counsel, first that -- at least here, Your Honor, where the Government has provided the documents showing that petitioner was made aware of all these conditions of his release on his own recognizance and that criminal activity of any kind could potentially be, you know, grounds to revoke that release.

That -- while I'm not familiar with the -- the caselaw referred to by opposing counsel regarding pre-deprivation notice --

**THE COURT:** Uh-huh.

**MR. NORTON:** -- here, at least, the Government can at least show that there was pre-deprivation notice at least in the sense that it was prophylactic, that petitioner was made aware, when released, that criminal activity can, and very likely could, result in his release being revoked.

Furthermore, Your Honor, here, I believe a warrant was obtained, an administrative warrant, for petitioner's arrest.

And so while respondents believe this is sufficient in order to revoke petitioner's parole and then provide a bond hearing to allow the Immigration Judge to analyze the risk of flight and danger under the *Guerra* factors, the -- based on the Court's tentative that, here, it's being conflated in a lot of contexts regarding the habeas petitions right now that -- it -- it does seem like petitioner is requesting a level of due process that is not even accounted for in the criminal context of U.S. citizens, where the access to family, et cetera, prior to initial appearance wouldn't be something that most people arrested in this district would be entitled to in the criminal context.

And so respondents agree with the Court's tentative, believe that -- while it's unclear whether the court, in the caselaw cited by Counsel, would rule differently, given the facts here, respondents believe the facts here of the -- the conditions of release being clear, regarding criminal history,

and then the Immigration Judge issuing an order corroborating that criminal history as part of the reason why bond is being denied under 1226(a) -- that the Court has sufficient information here to make its tentative ruling that the petition should be denied.

**THE COURT:** How do you respond to Ms. Lopez's argument that, in the examples I gave -- that at least some standard is being applied by some government official to deprive someone of their liberty, whereas here -- that there's no standard for pre- -- there's no standard for -- for the arrest, essentially?

**MR. NORTON:** Well, Your Honor, I believe the statute accounts for the fact that a -- a DHS authority -- I believe it's been delegated from -- directly from the Secretary down to any ICE agent -- but that a government official has to make that custody determination and provide that to petitioner upon arrest.

I believe that's provided here along with the arrest warrant showing that petitioner would be detained and could request -- and that an Immigration Judge reviewed that decision, which is precisely what happened, like Counsel said, I believe, a month later after his arrest.

And so I would -- I would ask what exactly -- what authority, outside of the statute, in this context, would require something additional than what's been done here?

**THE COURT:** Hmm.

Okay. Thank you, Mr. Norton.

Ms. Lopez, anything further?

**MS. LOPEZ:** I know the Government cites to a warrant.

Is there a -- is there a specific exhibit that's a warrant?

**MR. NORTON:** Your Honor, here, I believe the -- the note -- the new notice to appear that was provided to petitioner constitutes a new charging document and notice in -- in this context, but --

**THE COURT:** Do you have the ECF cite for Counsel?

**MR. NORTON:** I believe it's 12-1, Your Honor.

**THE COURT:** Okay.

**MS. LOPEZ:** What page?

**MR. NORTON:** At 36.

**THE COURT:** ECF 12-1, at Page 36.

**MS. LOPEZ:** I don't see a warrant. I don't -- maybe I'm off --

**THE COURT:** So Page 36 looks like a blank page to me. It's a 36-page document.

Is there -- the page number is probably on the top right.

**MR. NORTON:** Oh.

My apologies, Your Honor. Page 15.

**THE COURT:** Page 15.

**MR. NORTON:** And it's --

**THE COURT:** Okay.

**MR. NORTON:** -- hanging off the edge there.

**MS. LOPEZ:** Oh.

Page 15?

**THE COURT:** Yeah.

I have mentioned to our Clerk's Office that the wraparound page markings at the top sometimes may create confusion as to what the page number is.

**MS. LOPEZ:** I know --

**THE COURT:** Yeah.

**MS. LOPEZ:** -- especially with pleadings.

**THE COURT:** Yeah.

And I've asked that that be fixed, but it hasn't been done yet. So --

**MS. LOPEZ:** I've been thinking about that.

**THE COURT:** -- I -- I think we're fighting against a national software application.

**MS. LOPEZ:** So if I could respond --

**THE COURT:** So I -- yeah, please respond.

But I see your -- Ms. Lopez -- so on Page 15, we do have what's listed as a notice to appear at -- just to clarify, though, do you contend, Mr. Norton, that this document constitutes a warrant?

**MR. NORTON:** No, Your Honor. The -- in --

**THE COURT:** It -- or just that it --

**MR. NORTON:** I believe that, statutorily, the new

charging document here on Page 2, I believe --

**THE COURT:** Which would be Page 6- --

**MR. NORTON:** -- indicates that --

**THE COURT:** -- 16 --

**MR. NORTON:** Yes.

**THE COURT:** -- of ECF 12-1?

**MR. NORTON:** Yes, Your Honor.

**THE COURT:** Okay.

**MR. NORTON:** Page 16 provides for the request for a prompt hearing but that -- can -- petitioner can request that it be filed immediately with the immigration court and that a hearing be provided within ten days.

But that's statutorily the note -- the notice to appear. A new charging document constitutes a notice of revocation of prior release, I believe, under 1182(d) -- 1182(b).

**MS. LOPEZ:** And if I could, Your Honor, I think my point is there's no -- normally, in a criminal case, you have a warrant or something, a finding of probable cause.

Government counsel's pointing to something that was created years before his current detention. It was created in 2019 or 2020. There's no warrant in this case --

**THE COURT:** Uh-huh.

**MS. LOPEZ:** -- at least that I -- that I could see, a warrant for his arrest.

**THE COURT:** Yeah.

I -- Mr. Norton, is there some part of this notice to appear, at ECF 12-1, Pages 15 and 16, that notifies Mr. Simon Juan that he'll be arrested?

**MR. NORTON:** No, Your -- my apologies, Your Honor.

So I -- I agree with Counsel. It looks like this -- I believe it was served on petitioner in person. I believe this would have been initially upon entry.

**THE COURT:** Uh-huh.

In 2019; right?

**MR. NORTON:** Yes, Your Honor.

**THE COURT:** Yeah.

**MR. NORTON:** So I'm -- I'm trying to find out -- I -- I thought a separate administrative warrant had been obtained --

**THE COURT:** Okay.

**MR. NORTON:** -- for the re-detention --

**THE COURT:** Well --

**MR. NORTON:** -- but --

**THE COURT:** -- why don't you -- if there is such a document, I'll give you a minute or two to hunt it down. But putting that issue aside, I'll assume there is not a warrant at the moment.

Did you want to respond to any of the other arguments, Ms. Lopez?

**MS. LOPEZ:** Just generally the idea that people are

getting a lot of process be- -- before they're -- they're detained. I -- I mean, the facts bear it out. What we have been seeing is that people are just being detained, and oftentimes they make lots of mistakes.

That's why there should be a pre-detention determination, especially for someone who has -- who the Court has indicated has a right to due process. Before we make --

**THE COURT:** Uh-huh.

**MS. LOPEZ:** -- mistakes, there should be some process before taking them in.

**THE COURT:** Yeah.

**MS. LOPEZ:** And so I don't think the bond hearing after the fact, especially more than a month after, cures that problem.

**THE COURT:** Okay. I appreciate -- I appreciate the parties' argument.

I'm going to take a few minutes to step off the bench and consider the parties' arguments, look at the record again and the cases that have been mentioned.

I will say -- I mentioned that, according to the caselaw, someone in Mr. Simon Juan's position does have a lower liberty interest than U.S. citizens in certain contexts, which I think is applicable to the analysis here.

I'll also mention that I'm mindful of the fact that everyone's due process interest in liberty is higher in the

civil arrest context, which is what we're in here, than it is in the criminal arrest context.

And so I'm -- I'm mindful of that as well and the fact that the Court, if it's ever in doubt or in gray areas, I think, should err on the side of liberty when it comes to deprivation of liberty in the civil arrest context.

But let me take a look at the -- the law and the -- the record some more, and I'll be back out to talk to you shortly.

And if you do find an arrest warrant, I'd be happy to take a look at it, Mr. Norton.

Thank you.

**MR. NORTON:** Thank you, Your Honor.

**MS. LOPEZ:** Thank you.

(Recess taken at 2:24 p.m.)

(Proceedings resumed at 2:33 p.m.)

**THE CLERK:** Remain seated and come to order. We are once again on the record.

**THE COURT:** All right. We are back on the record.

Let me say that I am sympathetic to the systemic arguments that Ms. Lopez has made. However, there's really nothing about all of that in the record before me, and I'm bound by the -- the record before me. There's certainly nothing in the record that suggests that the government officials involved in the detention here were sloppy or were making mistakes in -- in the execution of the arrest here.

The -- the record before me -- and I'm -- I'm particularly thinking of ECF 12-1, Page 12, which is the report -- the I-213 report that was filed by the deportation officer -- indicates that Mr. Simon Juan did receive something akin to a probable cause determination between -- before -- and I'm not saying that's -- that's required. I'm just responding to the argument -- before his arrest.

It says that the -- the agents, on July 9th, 2025, checked EARM with a positive result. They checked TECS. They checked a number of other systems and became aware that he had committed a crime, which was in violation of the terms of his parole.

That -- on Page 12, they write that, "ERO San Diego Alternatives to Detention intends to conduct" -- "intends to conduct a custodial arrest on Mr. Simon Juan," comma, "Pedro, a 31-year-old citizen of Guatemala. Simon is currently enrolled in the San Diego Field Office ATD program." That's Alternatives to Detention.

"On July 9th, 2025, at approximately 11:00 a.m., Simon reported to the ISAP building for his scheduled appointment with his case specialist. The deportation officers -- Dominguez, Ebba, and Nunez -- responded and informed Simon that he was going to be taken into custody. At approximately 11:15 a.m., Simon was informed he was under arrest and would be remanded back into custody."

So they conducted records checks on him beforehand, learned that he had committed a crime -- or, at least according to those records, he had committed a crime. It seems to me if this were in any other context, that would constitute probable cause and -- and that the government agents were entitled to rely on that information in detaining him.

I don't think that a warrant for arrest, even if Mr. Norton found one, would really be relevant to the analysis. With or without a warrant, signed off on by an Immigration Judge or some other government official, I think the DHS officials were -- were entitled to take him into custody, based on the evidence they had that he had committed a crime, and probably would have been -- could be criticized if they had not done so.

And based on the analysis I provided earlier, he was entitled to post-deprivation protections or safeguards, which he received. An Immigration Judge determined that he was a flight risk. If that's an error, there is a process for reviewing that up to the Board of Immigration Appeals, but it does not seem to me that the lack of a pre-deprivation determination constitutes a due process violation in this context and on this record.

So I would respectfully deny the amended habeas petition, and we'll plan on issuing a short order to that effect simply incorporating the -- the Court's comments from this hearing and

the prior hearing.

Is there any need for clarification about the Court's ruling by either side?

**MS. LOPEZ:** No, Your Honor.

**MR. NORTON:** Not -- not regarding the ruling, Your Honor.

I just -- I wanted to note I -- I e-filed a copy of the arrest warrant that was obtained to opposing counsel and the Court.

**THE COURT:** Ah.

**MR. NORTON:** Again, I -- I -- I agree with the Court that I don't think it's a -- a necessary demonstration here. However, it's something I would normally provide -- included in the exhibits.

**THE COURT:** Hmm.

**MR. NORTON:** I believe, in Mr. Simon Juan's last petition, the original petition in this case, re-detention wasn't the -- the crux of the argument.

And so I -- I think it was --

**THE COURT:** It wasn't, yeah. Hmm.

**MR. NORTON:** -- an oversight, but I have since gotten a copy and --

**THE COURT:** Oh.

**MR. NORTON:** -- and provided it, to the extent the Court would like to review it.

**THE COURT:** Okay. Like I said, I -- I think that the petition -- or the amended petition is properly denied, whether there was a -- a warrant or not. That certainly addresses one of the arguments that was raised by petitioner here, but I don't think it's dispositive. But I appreciate you sending that to the Court, though.

All right. I'm sure I'll be seeing you both again on some future case.

(Laughter.)

**THE COURT:** Have a good rest of your afternoon.

**MS. LOPEZ:** Thank you.

**MR. NORTON:** Likewise.

Thank you.

**THE COURT:** Take care.

**MS. LOPEZ:** Thank you.

(Proceedings adjourned at 2:40 p.m.)

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, September 4, 2026

James C. Pence-Aviles, RMR, CRR, CSR No. 13059
U.S. Court Reporter